Hobbs *v.* Lewis *et al.*

*(Knoxville,* September Term, 1953.)

Opinion filed July 23, 1954.

McEwan & Walker, of Chattanooga, for appellant.

E. H. Rayson, R. R. Kramer, Kramer, Dye, McNabb & Greenwood, all of Knoxville, for appellees.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

Hobbs, appellant here, complainant below, and Tennessee Products and Chemical Corporation, a defendant, are residents of Tennessee. The defendant trustees of the United Mine Workers of America Welfare and Retirement Fund, appellees here, are residents of the District of Columbia. The Tennessee Products and Chemical Corporation is indebted to these trustees in the sum of $3,500. The money is owed by virtue of a clause in the contract between the United Mine Workers of America and operators of coal mines in numerous states, whereby each operator is to pay to these trustees at stated periods 30¢ for each ton of coal mined. A portion of these funds in an amount to be determined by the trustees of the Welfare and Retirement Fund is, after receipt, to be allocated to a fund for the payment of pensions to those coal miners of this labor union who qualify for such pensions. The trustees of the Welfare and Retirement Fund are likewise trustees of the pension funds which, after payment to themselves as Trustees of the Pension Fund from the Welfare and Retirement Fund, are carried in a different account, and in their capacity as trustees of the Pension Fund.

Hobbs thinks that he is entitled to a pension payable from this Pension Fund. Being unable to get personal

service in Tennessee on these trustees, he attached (by garnishment) this debt owed by the Products and Chemical Corporation to the trustees of the Welfare and Retirement Fund.

These trustees, by pleas in abatement, challenged the jurisdiction of the Court upon each of two grounds. Two of the pleas, each determinative of the case, were sustained, and the bill dismissed. Hobbs appeals to this Court, the facts being stipulated.

The facts which the trustees thought defeated the jurisdiction of the Court in which Hobbs filed his bill did not appear on the face of that bill. Therefore, in order to bring those facts to the knowledge of the Court it was necessary to aver them in the plea. Hobbs' insistence is that the averment of these extraneous matters constitutes the pleading as one in bar rather than as one in abatement; hence, that these trustees have entered a general appearance.

██ "Jurisdiction can always be raised by plea in abatement". *Hurst-Boillin Co.* v. *Kelly*, 146 Tenn. 251, 254, 240 S. W. 771. Where the record does not disclose the facts upon which the plea is to be based, it is proper for the pleas to aver those facts. *Padgett* v. *Ducktown, etc., Iron Company*, 97 Tenn. 690, 692, 37 S. W. 698; *Bryan* v. *Norfolk & W. Railroad Co.*, 119 Tenn. 349, 354, 104 S. W. 523. Such a plea operates only as a special appearance. *Purnell* v. *Morton Live Stock Co.*, 156 Tenn. 383, 385, 386, 1 S. W. (2d) 1013. Compare *Harrell* v. *American Home Mortgage Company*, 162 Tenn. 371, 375, 36 S. W. (2d) 888. Hence, Hobbs is mistaken in his insistence that the trustees entered a general appearance by the filing of such pleas.

The stipulation discloses the following:

The trustees of this trust reside in Washington. The operators remit to them in Washington. It is there that all of its properties and all of its records are located, and all its moneys held and all of its business transacted. Its funds consist entirely of personalty, somtimes called in this record "movables", meaning tangible and intangible personalty. Those properties are principally cash in banks in Washington, and securities of the United States. The moneys paid into the Welfare and Retirement Fund are divided into (1) a pension account and (2) a general account for other purposes. They are then kept entirely separate in Washington, D. C., banks.

The fourth plea in abatement (it was sustained by the Chancellor) is that (a) the trust in question is one of movables with its situs in Washington, and (b) the question presented by Hobbs' bill is one involving the administration of that trust; hence, that the question may be resolved only "by a court having jurisdiction within the territory in which the situs of the trust is located", to wit, a court in Washington, D. C.

The question raised by the bill is one which has to do with the relation between these trustees and Hobbs as a beneficiary, if he be such, of this movable trust. The question, therefore, relates to the administration of the trust. Volume 2 of Scott on Trusts, Section 163A, page 824. No Tennessee decision has been found which deals with the question of what Courts have jurisdiction of the administration of such a trust, as distinguished from those which do not have jurisdiction. The question has, however, been decided by a few of our State Courts of last resort.

In the Illinois case of *People* v. *First National Bank*

reported in 364 Ill. 262, 4 N. E. (2d) 378, at page 380, 108 A. L. R. 277, at page 281, the Court holds this:

"In order to determine where the administration of the trust is located and whether it is under the jurisdiction of the authorities of this state, consideration must be given to the provisions of the trust instrument, the residences of the trustees, the residences, if any, of the beneficiaries, the location of the properties, and the location where the business of the trust is to be carried on. Restatement Conflict of Laws, § 297, p. 379."

Applying the general rule there stated it seems to be an accurate conclusion that the situs of the trust involved in this case is Washington, D. C. Appellant's brief frankly so concedes.

In the annotation of 115 A. L. R. pages 807-808, wherein this question is discussed, there appears the following:

"There is no doubt that under the doctrine of forum conveniens, the situs of the administration of the trust * * is the proper forum for all actions by or against the trustees or accounting by them, and under this doctrine the courts of other states may, although they may have personal jurisdiction over the trustees, properly decline to take cognizance of such actions by or against trustees. See *Marsh* v. *Marsh*, 73 N. J. Eq. 99, 67 A. 706.

"American Law Institute, Restatement of the Conflict of Laws, provides, in respect to this question: 'Section 299. The administration of a trust of movables is supervised by the courts of that state only in which the adminstration of the trust is located. * * *,'"

The brief submitted in behalf of the trustees in the instant case cites two cases holding in accord with the Illinois case quoted above. They are the Pennsylvania case of *Lines* v. *Lines*, 142 Pa. 149, 21 A. 809, 24 Am. St. Rep. 487 and *Everhart* v. *Provident Life & Trust Co.*, 118 Misc. 852, 195 N. Y. S. 388.

Thus, precedent and textwriters seem to support the conclusion that "the administration of a trust of movables is supervised by the Courts of that state only in which the situs of the trust is located". Section 299, of the Restatement of Conflict of Laws.

Reason likewise seems to be consistent with such precedent. In this connection, we quote from appellee's brief its quotation from an article in 45 Harvard Law Review, 969, 972, as follows:

" 'The question to what court a trustee of a living trust is responsible in the matter of instructions and accounting is of much importance. Although it is not generally understood, it must be clear that a trustee must be responsible to the courts of one state only; otherwise, conflicting instructions and differences as to accounts will make the administration of a trust impossible. If one court is to give instructions and orders to a trustee and to approve his accounts, that court must clearly be one of the state of the seat of the trust; and it has been held that only such a court can instruct, control, or remove the trustee.' "

Since the situs of this trust of movables is at Washington, D. C., it seems necessary to hold, both by reason of principle as well as persuasive precedent, that the Courts of Tennessee have no jurisdiction to entertain Hobbs' suit for any purpose connected with the ad-

ministration of that trust. As this holding is determinative of the case, it is not necessary to consider the Chancellor's action in sustaining the third ground of the plea in abatement.

Let the decree be affirmed with costs taxed to Hobbs.