**Thatcher Estate**

Before Boyle, P. J., Rahauser, Kramer and Hay, JJ.

*Zupancic & Flaherty,* for petitioner.

*John H. Neely,* for respondent.

HAY, J., March 4, 1969.—This case initially came before this court on a petition by a resident cotrustee of a testamentary trust created under a will probated in New Mexico praying that a citation be awarded directed to the other cotrustee, also a

resident of Allegheny County, to show cause why a person or persons employed to assist petitioner in the management of the trust estate should not be paid compensation for such services from the trust fund. There was also included in that petition a vague assertion that a portion of the corpus of the trust lies within the jurisdiction of this court. Respondent filed preliminary objections alleging first that this court lacked jurisdiction, and secondly that the cotrustee did not jointly agree to incur the obligation referred to in the petition.

The court sustained the preliminary objections of the respondents stating that the facts as set forth in the petition were either insufficiently presented or lacking as to necessary details, and gave further guidance to petitioner, with leave to file an amended petition within 20 days, setting forth those facts suggested in the opinion.

Petitioner, pursuant to the aforementioned opinion and decree, entered by this court on October 14, 1968, filed an amended petition for citation directed to the cotrustee to show cause why a person or persons employed to assist petitioner in the management of the trust estate should not be paid compensation for such services from the trust estate. The amended petition included, inter alia, that John H. Thatcher was domiciled in the State of New Mexico; that decedent's last will and testament was admitted to probate at no. 1282 of the probate court of McKinley County, New Mexico, when the estate had been fully administered; that the testamentary trust appointed his ". . . two nephews, Charles H. Thatcher and John Thatcher, both of Willock, Pennsylvania, or the survivor . . ." as cotrustees, and further named the Colonial Trust Company, now Pittsburgh National Bank, of Pittsburgh, Pa., as a successor trustee to wind up, to determine and distribute the trust

estate in the manner set forth in the will. The petition further pointed out that a major portion of the corpus of the trust, in the form of United States Series "E" Bonds, was and is presently located in the Pleasant Hills Office of the Mellon National Bank and Trust Company; that a checking account is maintained at Lincoln National Bank, Large, Allegheny County, Pa.; that the remaining asset of the trust is income-producing realty situated in the State of New Mexico and that most of the beneficiaries live in or near Allegheny County, Pa. Respondent's answer to said petition admitted that the trust assets were located in Allegheny County, but contended that the legal situs of the assets was and is controlled by, and under administration of the probate court of McKinley County, New Mexico, and further averred that the petition "fails to aver any facts establishing the right, authority or power in the Orphans' Court of Allegheny County to administer said testamentary trust." In its present posture therefore, this court must initially decide whether or not it has jurisdiction over that part of the trust res situated in Allegheny County, Pa.

The pertinent sections of the Restatement, Conflict of Laws, read as follows:

"§298.   Administration   of   Trust   of   Movables
Created by Will.

"A testamentary trust of movables is administered by the trustee according to the law of the state of the testator's domicil at the time of his death unless the will shows an intention that the trust should be administered in another state."

The Comment reads as follows:

"a. *Testator's intention.* In the case of a testamentary trust, the state in which the testator intended the trust to be administered is presumptively the

state of the testator's domicil at the time of his death, since it is natural to suppose that he intended the trust to be administered in the same place in which his estate was to be administered, and under the direction of the courts of that state.

"b. In the case of a testamentary trust, however, it may appear that the trust is located in another state than that of the testator's domicil.

"c. *Foreign trust company appointed trustee.* If the testator appoints as trustee a trust company of another state, presumptively his intention is that the trust should be administered in the latter state; the trust will, therefore, be administered according to the law of the latter state."

"§299. Administration: By what Court Supervised.

"The administration of a trust of movables is supervised by the courts of that state only in which the administration of the trust is located."

The Comment reads as follows:

"a. In the case of a testamentary trust, the administration of the trust will be supervised by the courts of the state in which the trust is to be administered, under the rule stated in §298."

This is illustrated in the Restatement as follows:

"Illustration No. 2.

"A, domiciled in state X, dies bequeathing his personal property to B Trust Company, a corporation of state Y, upon trust. The B Trust Company applies to a court of Y, for directions. The directions will be given.

"Illustration No. 3.

"A, domiciled in state X, conveys personal property to B upon trust. Both B and the beneficiary are domiciled in state Y, where the property is also situated. B dies. The court of Y will appoint a new trustee, the court of X will not."

In applying these principles as set forth in the appropriate sections of the Restatement, we have the following:

Testator, domiciled in the State of New Mexico, died bequeathing the trust res to A and B, cotrustees, both cotrustees being located and domiciled in Allegheny County, Pa., and upon the death of the survivor of them to the Colonial Trust Company, now Pittsburgh National Bank, located in Allegheny County, Pa. In addition thereto, the majority of the beneficiaries of the settlor's trust reside in or near Allegheny County, Pa., and the movable items[1] of the trust res are located in Pennsylvania. These factors show a definite intention by the testator that this trust should be administered in and in accordance with the laws of Pennsylvania.

The leading case in Pennsylvania concerned with the administration of a testamentary trust of movables, where a foreign trustee was named and the situs of the trust was in a foreign State, is Cronin's Case, 326 Pa. 343 (1937). In that case a trust was created under the will of the testator, a New York domiciliary, naming a Pennsylvania trust company as trustee and directing that the trust res be delivered to it. After the trustee had received the trust res, the Commonwealth of Pennsylvania made a demand on the trustee for payment of its maintenance charge for decedent's niece, an inmate in a hospital in Philadelphia maintained in part at the expense of the Common-

---

[1] By the term "movables" we include everything that is not immovable, and immovable properly includes only land and things so attached to land that they cannot be removed without a change of factual or legal character. Movables may be further divided into three classes: tangibles, securities and intangibles. This classification is not a final one, however, for movables are capable of being grouped into aggregate units. They may therefore be dealt with one by one or they may be aggregated and dealt with as an aggregate unit. See 45 Harv. L. Rev. 969.

wealth and a beneficiary of the trust. The trustee filed its account in the surrogate's court together with the usual form of petition setting forth the facts incident thereto. A citation was issued against the Commonwealth and the Commonwealth appeared specially before the surrogate in the Surrogate's Court of Broome County, New York, contending lack of jurisdiction in that court over the subject matter of the proceeding. This objection was formally over-ruled by the surrogate. During this period, the trustee filed its account, but before the day fixed for hearing in the New York court the Commonwealth filed a petition in the Orphans' Court of this Common-wealth pursuant to our Act of June 1, 1915, P. L. 661, 71 PS §1784, as amended, setting forth the facts and praying for a rule on the trustee to show cause why it should not pay to the Commonwealth a stated sum of money. The rule was granted; the trustee answered, and after hearing, the rule was made absolute by the order appealed from.

The Supreme Court in its opinion stated:

"The estate of the testatrix was distributed by ad-ministration according to the law of New York. That administration included the award of trust property to the appellant trustee, a Pennsylvania corporation, to be expended for the benefit of the feeble-minded niece then in the Byberry Hospital maintained in part by the Commonwealth. *The award was, however, not absolute; it was conditioned,* as required by the New York Law, by the decree of the Surrogate's Court on the entry of a bond that the trustee 'shall faithfully discharge the trust reposed in it as Trustee under the last Will and Testament of Fannie E. Emmons, late of the Town of Conklin in the County of Broome, N. Y., deceased, and also obey all lawful decrees and orders of the Surrogate's Court of the County of Broome touching the administration of the estate

committed to it. . .' In addition, the trustee also executed, as required, a certificate appointing the Superintendent of Banks of the State of New York its attorney to receive service of process against the trustee in any proceeding 'affecting or relating to the Estate represented or held by it as such Trustee, or the acts or defaults of such corporation in reference to such Estate' etc. We think, therefore, that the New York court retained jurisdiction over the continued administration of the trust. Against this view, it is contended by the Commonwealth (and it was so held by the learned court below) that the case is within section 298 of the Restatement, Conflict of Laws, that 'A testamentary trust of movables is administered by the trustee according to the law of the state of the testator's domicil at the time of his death unless the will shows an intention that the trust should be administered in another state,' as affected by Comment (c) which states that 'If the testator appoints as trustee a trust company of another state, presumptively his intention is that the trust should be administered in the latter state; the trust will, therefore, be administered according to the law of the latter state.' The facts here rebut the presumption of intention suggested in the comment. The words used in the will to express her intention must be taken in the light of the statutory requirement that the trustee account to the New York court for its administration of the trust, the testatrix not having provided otherwise. In such circumstances, it is immaterial that the trust property was brought into this Commonwealth, because it remained subject to distribution by the New York court."

Our Supreme Court, after citing in its entirety §298 of the Restatement, Conflict of Laws, and comment (c), held that the facts as set forth, specifically the awarding of the trust res to the trustees being con-

ditioned on the executing of a bond, the contents thereof, and the appointment of the superintendent of Banks of the State of New York as its attorney to receive service were sufficient to rebut the presumption of intention as suggested in the comment. The court based its reasoning on the fact *that the words used in the will to express her intention must be viewed in the light of the statutory requirement* that the trustee account to the New York court for its administration of the trust, making the award conditional, not absolute. Therefore, New York law requiring the trustee to account to the New York court of probate and also execute a certificate appointing a designated New York agent as its attorney to receive service of process against it were sufficient to rebut the presumption of intention set forth in the will. If those statutory requirements had not been before the court, undoubtedly the court would have applied §298 of the Restatement, Conflict of Laws. It would seem therefore that the interpretation given to the Restatement rule in general is that there is a presumption that the testator intended the law of his domicil at the time of his death to govern, which intention might be rebutted by express intent or by an intent to be inferred from operative factors such as the appointment as trustee of a trust company of another state.

In a Wisconsin decision, Will of Risher, 227 Wis. 104, 277 N. W. 160, 163 (1938), testator, while a resident of Pennsylvania, named a Pennsylvania trust company as trustee in his will, which provided that if his wife and children should predecease him, the trust fund should be distributed according to the Pennsylvania intestate laws. Testator died a Wisconsin domiciliary and the court there held that Pennsylvania law would govern administration of the trust. In that case the factors indicating Pennsylvania law

should govern, in addition to the naming of a foreign trustee, was that the situs of the trust was in Pennsylvania. If the situation were to arise however wherein a foreign trustee was named and the trust res was not delivered to him and no other operative factors were found in the State of the foreign trustee, then it is conceivable that since the situs of the trust in that state, or substantial contact with that state, could hardly be found, the presumption of intention would be held not to operate, being rebutted by the operative facts. See Matter of Avery, 45 Misc. 529, 92 N. Y. Supp. 974 (1904).

In Keeney v. Morse, 71 App. Div. 104, 75 N. Y. Supp. 728 (1902), the domicil of the testator was in Rhode Island, but substantially all of the operative factors (such as trustee and trust res) were in New York. The New York court held that the law of that state would govern administration of the trust.

In Bank of New York v. Shillito, 14 N. Y. S. 2d 458 (1939), testator died domiciled in Massachusetts and his will was probated there. But in his will he appointed a New York corporation as trustee and directed the trust res be turned over to it. The New York court there held that New York law governed administration of the trust. See also Wilmington Trust Co. v. Wilmington Trust Co., 15 A. 2d 153 (Del. Ch. 1940), and Hutchison v. Ross, 262 N. Y. 381, 187 N. E. 65 (1933).

Casey's Estate, 19 Montg. 135 (1902), was a case wherein testator died domiciled in Washington, D. C., and his will was duly probated in that city. The instrument further stated that the trust res was to be paid to a trust company in Philadelphia, which was done by the executors without court order. The court therein stated testator named as trustee a corporation chartered by the State of Pennsylvania and located in Philadelphia, and he placed the trust fund in

charge of that corporation. The trustee is accountable only to the courts of this Commonwealth. See also In Re Davis Trust, 26 Misc. 2d 1077, 202 N. Y. S. 2d 106, 108; Franklin Foundation v. Attorney General, 340 Mass. 197, 163 N.E. 2d 662, 667; and Boston Savings Deposit and Trust Company v. Alfred University, 339 Mass. 82, 157 N. E. 2d 662; 665; Cf. Peterzell Trust, 7 D. & C. 2d 400 (1956).

In the case presently before this court, the petition presented and respondent's answer are bare of any statutory requirements of the State of New Mexico, which would require that the trust be administered according to the laws of New Mexico and by that court. This being the case, our present situation is distinguishable from Cronin's Estate, supra, and based on the facts in the instant situation, the Supreme Court of Pennsylvania would undoubtedly have applied section 298 of the Restatement, Conflict of Laws.

Stampolis v. Lewis, 186 Pa. Superior Ct. 285, was an action in assumpsit initiated by plaintiff, a miner, directed against funds held by the garnishee, a mine operator, and owing to defendant from the welfare and retirement fund created under an agreement between the mine operators and United Mine Workers of America. Plaintiff sought a pension from the fund. The fund appeared de bene esse and filed preliminary objections alleging lack of jurisdiction. The court below quashed the writ and plaintiff took an appeal.

The facts therein, as stipulated by the parties, revealed that the agreement was executed in Washington, D. C., and provided that the trust should have its place of business in Washington, D. C. All of its personal property in the form of stocks, bonds and cash had been kept in Washington, D. C. There were three trustees, none of whom resided in Pennsylvania.

The court therein, after discussing the action of foreign attachment, went on to state at pages 288 and 289:

"There is respectable authority for the principles of law that a trust of movables created by an instrument inter vivos is administered by the trustee according to the law of the state where the instrument creating the trust locates the administration of the trust, Restatement, Conflict of Laws, §297, and that the administration of a trust of movables is supervised by the courts of that state only in which the administration of the trust is located, Restatement, Conflict of Laws, §299. See also: *Hobbs v. John L. Lewis et al.,* 197 Tenn. 44, 270 S.W. 2d 352; *Kitchen v. New York Trust Co.,* 292 Ky. 706, 168 S.W. 2d 5. The rationale of these authorities is that a trustee should be responsible to the courts of one state only in order to avoid conflicting instructions which would make the administration of the trust difficult. There is also good authority for the principle of law that if a court has jurisdiction of the trust res, it may render a judgment in rem or quasi in rem affecting a nonresident defendant constructively summoned with reference to the res in the court's control but it may not render a judgment in personam: *Heinz's Estate,* 313 Pa. 6, 9, 169 A.365; *Jones v. Jones,* 344 Pa. 310, 317, 25 A. 2d 327; 90 C.J.S. §454(a); 15 A.L.R. 2d 618. We are impressed by the thought that thousands of miners throughout the land should also be entitled to some consideration. Surely their convenience should be considered as well as that of the trustees. The trustees in six years received over $800,000,000 from this source, a considerable portion of which came from Pennsylvania, and they can better afford to come here and litigate than can the miners go to Washington, D. C. to do so."

On the basis of the facts set forth in the petitions presently before this court, the Restatement, Conflict of Laws and the applicable case law, this court finds that it was testator's intent that this trust should be administered in and according to the laws of Pennsylvania. Therefore, this court has jurisdiction over the movable portion of the trust res located in this Commonwealth. The preliminary objections of respondent are accordingly overruled and respondent is granted 30 days from the date hereof to file an answer to petitioner's petition.

## DECREE

And now, to wit, March 4, 1969, the preliminary objections of respondent are overruled and the respondent is granted 30 days from the date hereof to file an answer to petitioner's petition.