MOBILE MECHANICAL CONTRAC-
TORS ASSOCIATION, INC., Plain-
tiff-Appellee-Appellant,

v.

Edward J. CARLOUGH, Individually and as the representative of all members of the Sheet Metal Workers' International Association, K. C. Doby, Jimmy A. Hinkle, Sheet Metal Workers' International Association, an unincorporated association, Sheet Metal Workers' International Association Local Union No. 441, an unincorporated association, Defendants-Appellants-Appellees,

and

A. Bruce McKenzie, John R. Falvella and Edward J. Carlough, in his capacity as a Trustee of the National Stabilization Agreement of the Sheet Metal Industry Trust Fund, Defendants-Appellees.

No. 76–1404.

United States Court of Appeals,
Fifth Circuit.

Oct. 3, 1977.

Rehearing Denied Jan. 30, 1978.

Donald W. Fisher, Toledo, Ohio, Roderick P. Stout, Mobile, Ala., for Carlough and Unions.

Harry Huge, Rogovin, Stern & Huge, Joel I. Klein, Washington, D. C., Jerome A. Cooper, Birmingham, Ala., for McKenzie, Falvella and Carlough.

Willis C. Darby, Jr., John Richard Carrigan, Mobile, Ala., for Mobile Mechanical Contractors.

Thomas Canafax, Jr., Chicago, Ill., Lawrence D. Ehrlich, Russell, Kan., Gerard C. Smetana, Chicago, Ill., for amicus curiae Central Fla. Sheet Metal Contractors' Assoc. Inc.

Before WISDOM, CLARK and RONEY, Circuit Judges.

CLARK, Circuit Judge:

In July of 1974, during collective bargaining negotiations, Sheet Metal Workers' International Association Local Number 441 (Local 441) presented Mobile Mechanical Contractors Association (Mobile), an employers association, a list of demands including, among others, that Mobile agree on behalf of the employers it represented to pay money to the National Stabilization Agreement of the Sheet Metal Industry Trust Fund (SASMI), an unemployment benefits trust. After Mobile refused to accept Local 441's demand, on July 16, 1974, Local 441 went on strike against employers which had designated Mobile as their exclusive bargaining agent. Mobile subsequently brought this action in the district court under section 302(e) of the Labor Management Relations Act of 1947, as amended,[1] 29 U.S.C. § 186(e) against the SASMI defendants[2] and the union defendants.[3] Mobile's complaint sought a declaratory judgment as to the lawfulness under section 302 of Local 441's demand for the employer contributions to SASMI and preliminary and permanent injunctive relief under section 302(e) against Local 441's demand and subsequent strike.

Section 302(a) prohibits payments by employers, or representatives of employers, to representatives of employees except under the limited circumstances set forth in section 302(c), which include specified payments to unemployment benefit trusts which comply with the provisions of the Act. Section 302(b) also prohibits requests and demands for payments that violate section 302(a). If SASMI does not satisfy the requirements of section 302(a), Local 441's demands and subsequent strike in furtherance of its demands are proscribed by section 302(b).

After a hearing on October 11, 1974, the district court issued a preliminary injunction against Local 441's continuation of the strike for SASMI contributions. On October 16, 1974, Mobile and Local 441 successfully negotiated a new 2-year collective bargaining agreement which contained no explicit references to SASMI.

After defendants filed their answer, Mobile amended its complaint to add a third cause of action seeking damages for alleged structural violations of Section 302(c), still asserting jurisdiction as to this claim solely under Section 302(e).[4] Mobile's amendment also added as fourth and fifth causes of action two different state law damage claims asserted under the district court's diversity jurisdiction, 28 U.S.C. § 1332, and

---

1. 61 Stat. 157, *as amended,* 73 Stat. 537 (1959). [Hereinafter all references to section 302 are to its amended version.]

2. SASMI defendants are Edward J. Carlough, the signatory employee of SASMI and presently one of its union trustees; A. Bruce McKenzie, an employer trustee of SASMI; and John R. Falvella, administrator of SASMI.

3. Union defendants are Sheet Metal Workers' International Association (Metal Workers), an unincorporated association; Edward J. Carlough, General President of Metal Workers; K. C. Doby and Jimmy A. Hinkle, International Organizers for Metal Workers' and Metal Workers Local Number 441 (Local 441), an unincorporated association.

4. The Declaratory Judgment Act, 28 U.S.C. §§ 2201–2 (1970), was also pleaded.

its pendent jurisdiction. *See United Mine Workers v. Gibbs,* 383 U.S.. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).[5] The SASMI trustees subsequently met and adopted amendments to the SASMI agreement and declaration of trust. These amendments substantially changed portions of the trust agreement that Mobile had attacked in its initial complaint.

Mobile then moved to file a supplemental complaint dealing with the threat of an agent of a Sheet Metal Workers' International Association (Metal Workers) local in Louisiana to strike an employer represented by Mobile for failure to pay money to SASMI, as amended. The district court granted the motion on April 4, 1975. On July 22, 1975, the district court dismissed the SASMI defendants "in the interest of justice."

On December 29, 1975, the district court entered a judgment pursuant to Federal Rule of Civil Procedure 54(b) and held, among other things: (1) Mobile's attack upon the validity of SASMI subsequent to October 16, 1974, and its request for injunctive relief against SASMI after that date were moot; (2) leave for Mobile to file its supplemental complaint was withdrawn; (3) from its inception through October 16, 1974, SASMI violated section 302, and, therefore, the demands of the union defendants and their subsequent strike during this period were declared unlawful.[6]

### THE MOOTNESS OF ISSUES RAISED AGAINST POST–OCTOBER 16, 1974 SASMI

■ The district court's preliminary injunction against the union defendants was grounded on the determination that SASMI was an unlawful trust under section 302 as amended; 29 U.S.C. § 186. The district

court found that the new 2-year collective bargaining agreement negotiated by Mobile shortly after entry of this order did not contain any provisions requiring Mobile or any of the employers which it represents to pay money to SASMI. On December 5, 1974, the SASMI trustees convened and extensively amended the procedures for the selection of union and employer trustees. The business manager of Local 441 testified that the members of Local 441 did not want to strike over SASMI but that if they ever did, he would advise them against such a strike and his recommendation would be followed. Based upon this testimony, the district court found that there was no reasonable likelihood that Local 441 would renew its demand for SASMI at the expiration of its then effective collective bargaining agreement and concluded that Mobile's attack on the lawfulness of SASMI at any time subsequent to October 16, 1974, was moot. The district court also refused to grant Mobile's request for a permanent injunction against the requests and demands of the union defendants to pay or agree to pay money to SASMI on the ground that the necessity for such relief was moot. The collective bargaining agreement which immediately followed the district court's preliminary injunction has since expired, and Mobile and Local 441 have entered into another round of collective bargaining negotiations. Neither party has indicated that any demands are being made by Local 441 upon Mobile to agree to contribute funds to SASMI.

The district court's entry of a preliminary injunction against Local 441's strike in support of SASMI and its finding that the SASMI Trust Agreement violated the equal representation requirement under section 302(c)(5)(B) obviously spurred the SASMI

---

**5.** Later Mobile amended its complaint a second time, asserting a Section 302(c) damage claim under 29 U.S.C. § 187. *See* note 6 *infra.*

**6.** The district court's rule 54(b) judgment was accompanied by an order setting forth its findings of facts and conclusions of law. This order, however, did not contain any findings of facts or conclusions of law pertinent to its determination that the pre-October 16, 1974 SASMI violates section 302. We look to the

findings of facts and conclusions of law set forth in its October 11, 1974 opinion accompanying its preliminary injunction as providing the basis for this determination.

The district court entered no judgment with respect to Mobile's two state law damage claims or in its Section 302(c) damage claim under 29 U.S.C. § 187. They therefore are not before this court.

trustee's subsequent amendment of the trust agreement in this regard. However, Mobile now seeks a determination that the SASMI trust as amended is invalid. This is so even though the employers it represents are not obligated to fund the amended trust and the union defendants have made no demands that Mobile or the employers it represents contribute to it. The abstract possibility that Mobile may suffer injury is not enough. Mobile must demonstrate it has sustained or is immediately in danger of sustaining some direct injury as a result of the defendant's actions. *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974), *quoting Massachusetts v. Mellon,* 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923).

Mobile concedes that speculative injury is insufficient to create a case or controversy within the terms of Article III of the Constitution but argues that the critical consideration in ascertaining mootness is the likelihood of recurrence of the allegedly illegal conduct to its detriment, citing *Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974).

In *Super Tire,* striking workers were receiving unemployment compensation benefits under a New Jersey statute. Their employer filed an action for declaratory and injunctive relief challenging the validity of the statute as it applied to its striking workers. The strike had ended, and the workers were no longer receiving benefits under the statute by the time the case reached the United States Supreme Court. Nonetheless, the Court held that the employer "[established] the existence of an immediate and definite governmental action or policy that has adversely affected and continues to affect a present interest", and noted that "the great majority of economic strikes do not last long enough for complete judicial review of the controversies they engender." *Id.* at 125–26, 94 S.Ct. at 1700.

The present case is different. The validity of SASMI as amended will not inevitably arise should Local 441 strike against employers that Mobile represents. Nor is it a foregone conclusion that Local 441 will make any demands upon Mobile to agree that it contribute moneys to the amended trust. As noted, a controlling official of Local 441 testified that the union members would accept his recommendation not to strike for SASMI, and for more than 2 years since SASMI was amended it does not appear that any such demands have been made. It is not the cessation of the labor strike which precludes our review of this issue. It is the new and different conditions created by the subsequent amendment of SASMI and the showing that its amended terms have never been pressed upon MMCA which compel this conclusion. Mobile's asserted potential injuries are too speculative to support judicial review.

### Mobile's Motion to File a Supplemental Complaint

Mobile's supplemental complaint contains allegations that the business agent of Sheet Metal Workers' International Association Local Number 361 (Local 361), demanded that Coast Corporation, an employer represented by Mobile, pay money to SASMI as amended for work performed under a Coast Corporation construction contract. Coast Corporation's work was performed in Hodge, Louisiana by 2 members of Local 441 and 37 members of Local 361. Local 361 rather than Local 441 has geographical jurisdiction over the work site, however, and it has a collective bargaining agreement with The Roofing and Sheet Metal Contractors' Association (Shreveport Association) of Shreveport, Louisiana. The collective bargaining agreement between Local 361 and the Shreveport Association provides that the employer must make monthly payments to SASMI representing 3 percent of the gross earnings of each employee subject to the collective bargaining agreement. The supplemental complaint sought a determination of whether Coast Corporation was required to comply with Local 361's demand in view of the terms of the collective bargaining agreement between Local 361 and the Shreveport Association.

Mobile argues that its supplemental complaint sets forth a cause of action present-

ing facts justifying further relief which occurred subsequent to the filing of its initial complaint, and that its pleadings raise the issue of whether its present collective bargaining agreement with Local 441 adopted by reference an agreement to pay money to SASMI.[7]

■ Withdrawal of leave for Mobile to file its supplemental complaint is a matter within the discretion of the district court and is to be reversed only when that discretion is abused. 6 C. Wright & A. Miller, Federal Practice & Procedure § 1504, at 543 (1961). *Compare Dunn v. Koehring Co.,* 546 F.2d 1193, 1198 (5th Cir. 1977), *with Freeman v. Continental Gin Co.,* 381 F.2d 459, 468–70 (5th Cir. 1967). The district court based its decision to withdraw leave on its findings that the allegations concerned alleged threats of persons not parties to the case and beyond the process of the court and presented legal issues involving obligations which arose, if at all, under the terms of a collective bargaining agreement entered into between Local 361 and the Shreveport Association, neither of which are parties to the case or subject to the court's process. The district court's determination was a proper exercise of its discretion. *See Cherry v. Morgan,* 267 F.2d 305 (5th Cir. 1959); *Schuckman v. Rubenstein,* 164 F.2d 952, 958–59 (6th Cir. 1947), *cert. denied,* 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151 (1958).

### The Validity of Pre-October 16, 1974 SASMI

The parties have not appealed from the district court's entry of the preliminary injunction or from its refusal of a permanent injunction as to the pre-October 16, 1974 trust as moot. However, the part of its December 29, 1975 rule 54(b) judgment, in which the district court entered a declaratory judgment that SASMI was an invalid trust under section 302(c) and that therefore the union defendants' demands that Mobile contribute to the trust were unlawful under section 302(b), has been appealed.[8]

■ We consider first the challenge to the jurisdiction of the court to grant declaratory relief and to entertain the portion of Mobile's suit against the union defendants and the SASMI defendants seeking damages. Section 302(e); 29 U.S.C. § 186(e) provides:

> The district courts of the United States and the United States courts of the Territories and possessions shall have jurisdiction, for cause shown, and subject to the provisions of section 381 of Title 28 (relating to notice to opposite party) to restrain violations of this section, without regard to the provisions of section 17 of Title 15 and section 52 of this title, and the provisions of sections 101–115 of this title.

In *Snider v. All State Administrators, Inc.,* 481 F.2d 387, 389–90 (5th Cir. 1973), *cert. denied,* 415 U.S. 957, 94 S.Ct. 1484, 39 L.Ed.2d 571 (1974), union trustees of a section 302(c) trust brought suit under section 302(e) against the administrator and other trust officials to enjoin the allegedly improper expenditures of trust funds by the administrator of the trust. They also sought additional relief to nullify the then-existing agreement between the trust fund

---

7. We note that the district court found in its December 29, 1975 order that the collective bargaining agreement between Local 441 and Mobile contains no provision requiring Mobile or any employer represented by Mobile to pay money to SASMI or to execute, adopt, and become a party to the SASMI Trust Agreement. Thus, the district court has resolved the very issue which Mobile asserts on appeal that its supplemental complaint raises.

8. The district court's conclusion that SASMI was an unlawful trust was based upon its findings that the SASMI Trust Agreement did not provide: (1) for equal representation of employers of the trust fund, (2) the participation of Mobile in the selection of neutral persons or an impartial umpire to resolve deadlocks in the administration of trust funds, (3) provisions setting forth the detailed basis on which payments are to be made to or from the trust as required by section 302(c)(5)(B), 29 U.S.C. § 186(c)(5)(B), and (4) that the trust agreement "apparently provides benefits for purposes which do not come within the stated permissible purposes" of section 302(c)(5)(A); 29 U.S.C. § 186(c)(5)(A).

and the administrator, to place the trust in receivership; to require complete disclosure of the books and funds, to remove defendants from their positions with the trust, to require the appointment of two employer trustees, and to order an accounting of all money owing to the trust by defendants. In affirming the district court's decision that its authority under section 302(e) was limited to granting injunctive relief against any future diversion of the trust funds, a panel of this court noted:

> [T]he federal court's ultimate exercise of adjudicatory power under this section is limited to the prevention of future violations since the Congress, as architect of its jurisdictional gambit, has not chosen to empower it to require an accounting or similar noninjunctive relief.

481 F.2d at 390. (Citations omitted.) *Snider* requires that the district court's authority under 302(e) be limited to enjoining any unlawful requests or demands to contribute to a section 302(c) trust such as SASMI. The district court was without authority to enter a declaratory judgment as to the rights of the parties to the suit; nor would it be authorized to grant damages under section 302(e).[9]

Nothing further remains for appellate review. We intimate no opinion about the rights of MMCA to institute an action under 28 U.S.C. §§ 1332, 1337 or 29 U.S.C. § 187 for declaratory relief or damages with respect to alleged Section 302(c) violations. *See Nedd v. United Mine Workers,* 556 F.2d 190 (3d Cir., 1977).

AFFIRMED IN PART, and IN PART VACATED and APPEAL DISMISSED.

## ON PETITION FOR REHEARING & REHEARING EN BANC

PER CURIAM:

On appeal of the district court's declaratory judgment that the pre-October 16, 1974, National Stabilization Agreement of the Sheet Metal Industry Trust Fund [SASMI] violated Section 302(c) of the Labor-

Management Relations Act, 29 U.S.C.A. § 186(c), we held that the district court lacked jurisdiction under Section 302(e), 29 U.S.C.A. § 186(e), to enter a declaratory judgment as to SASMI's legality. We also declined to consider whether plaintiff could institute an action for declaratory relief based upon jurisdictional statutes not pled in district court. On petition for rehearing, we modify our jurisdictional holding but adhere to our disposition of the case.

Section 302(e) confers jurisdiction on the district court to "restrain violations of this section . . . ." Relying upon *Snider v. All State Administrators, Inc.,* 481 F.2d 387 (5th Cir. 1973), we held that Section 302(c) did not permit the court to grant a declaratory judgment. If applied in other situations without qualification, this holding would be too broad. *Snider* does not distinguish between injunctive and declaratory relief. Rather, it construes Section 302(e) to grant limited jurisdiction for prevention of future violations which does not include remedies for past infractions. However, we reject the contention of plaintiff, Mobile Mechanical Contractors Association, Inc. [MMCA], that *Costello v. Lipsitz,* 547 F.2d 1267 (5th Cir. 1977) contradicts *Snider* and indicates that Section 302(e) authorizes the grant of declaratory relief in the case at bar. In *Costello,* an action also predicated upon Section 302(e) jurisdiction, this circuit reversed the district court on the merits but recognized that a court could grant declaratory relief under Section 302(e). However, *Costello* did not modify *Snider's* interpretation of Section 302(e) jurisdiction as limited to remedies for future violations. Whether a district court can grant declaratory relief under Section 302(e) jurisdiction depends, therefore, upon whether such relief, under the circumstances of the case, looks to the future or to the past. While the declaratory relief sought in *Costello* would have prevented existing violations from continuing, the declaratory re-

---

9. We note that in *Associated Contractors of Essex County, Inc. v. Laborers International Union of North America, Local Union No. 342, et al.,* No. 76-2011, 559 F.2d 222, 95 L.R.R.M. 2908 (3d Cir., June 23, 1977), the Third Circuit approved without specific analysis the grant of declaratory as well as injunctive relief in an action apparently asserting basic jurisdiction only under section 302. *Snider* compels our disagreement.

lief sought by MMCA in the case at bar would only decide past issues related to possible damage liability growing out of union efforts to get employers to contribute to the SASMI trust prior to October 16, 1974. Accordingly, we adhere to our decision that the relief sought by MMCA—a declaration of the invalidity of SASMI prior to October 16, 1974—is not available under Section 302(e) jurisdiction.

MMCA also contends that if the district court lacked jurisdiction to grant declaratory relief under Section 302(e), the sole jurisdictional basis pled before the district court, the panel should have affirmed the relief granted if the court's jurisdiction could have been based upon any other statutory grant. MMCA asserts that the district court would have had jurisdiction to award declaratory relief under 28 U.S.C.A. § 1337. MMCA did not plead Section 1337 jurisdiction before the district court, but it cites instances in which this circuit has declined to dismiss a suit that clearly could have proceeded under Section 1337 jurisdiction if that statute had been pled in the district court.

This circuit has sustained federal jurisdiction under a federal statute not relied upon in the district court, *Paynes v. Lee*, 377 F.2d 61, 63 (5th Cir. 1967). More pertinently, we have found jurisdiction under Section 1337 for controversies under the National Labor Relations Act [NLRA]; *Templeton v. Dixie Color Printing Co.*, 444 F.2d 1064, 1067 (5th Cir. 1971); *Boire v. Miami Herald Publishing Co.*, 343 F.2d 17, 20 (5th Cir. 1965). But, where we have allowed a controversy under the NLRA to proceed under Section 1337 though it was not pled, we have indicated that the decision whether we would supply the statute or dismiss the claim for want of jurisdiction remains a matter of judicial discretion. *See Mumford v. Glover*, 503 F.2d 878, 882–83 (5th Cir. 1974); *Smith v. Local 25 Sheet Metal Workers*, 500 F.2d 741 (5th Cir. 1974); Wright & Miller, Federal Practice & Procedure, § 1206 & nn.66–67 (1969 ed. & 1977 supp.). ■ The district court's Rule 54(b) judgment setting forth its findings of fact and conclusions of law did not contain any findings of fact or conclusions of law pertinent

to its determination that the pre-October 16, 1974, SASMI violates Section 302. To review that aspect of the district court's decision, we looked to the findings of fact and conclusions of law set forth in the district court's October 11, 1974, opinion which accompanied its preliminary injunction. The district court's findings of fact and conclusions of law issued under the pressure of a lengthy on-going strike by Local 441 against MMCA. Because we determine that an orderly development of the issues in this case requires further and more deliberate factual proceedings, we decline to invoke alternative jurisdictional bases that may have been open to MMCA.

With the above modification and clarifications, the petition for rehearing is DENIED and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is DENIED.